Commonwealth of Massachusetts

Worcester, ss.                                    Superior Court
                                                 Criminal   Session
                          FILED            No. 96-0458 [1-5]
                     IN CLERKS OFFICE
            Commonwealth

                     2005 JAN 31  P 5: 03

                 v.     U.S. DISTRICT COURT
                        DISTRICT OF MASS.

            John LeBla     05-1027 LMLW

            Defendant's  Memorandum  of  Law  in
            Support of his Motion for a New Trial  *referred to chmJ Bowler*

        The  defendant  John  LeBlanc,  submits  his  memorandum  of

law  in  support  of  his  motion  for  a  new  trial,  set  the  following

facts:

## I. Statement of the Case

        The  defendant  was  convicted  of  (2)  counts  of  murder  in

the  first  degree.  Claiming  that  the  involuntary  statements

confessed  to  the  police  were  coerced,  due  to  the  extreme

emotional  disturbance  caused  by  the  police  during  the  inter-

rogation,  while  the  defendant  was  under  the  influence  of

alcohol  and  drugs.

        The  relevant  facts  of  the  case  are  that  (2)  teenagers,

April  Church  and  Jamie  Snow  had  disappeared  on  August  1,  1996.

Then  (5)  days  later  their  badly  decomposed  bodies  were  found

on  a  dirt  road.

        On  August  8,  1996,  the  defendants'  mother  had  flagged

down  an  officer  from  the  Sturbridge  Police  Dept.  The  Officer

then  drove  the  defendants  mother  home,  anmd  she  invited  him

inside  to  speak  to  her  son.  Allegedly  the  defendant  stated  to

-1-

the officer that he wanted to talk with the officer, after speaking to the news media crew that had been outside of his home.

The officer had then informed the defendant that for his own safety. It would be advisable for him to go to the police station. Instead of attracting the media's attention. The Officer then asked the defendant to go with him and lie down in the back of his cruiser for the short trip to the station, so that the defendant would not be noticed by the news media.

The defendant was drinking and using a drug known as [Xanax]. The Officer alleged that during the interrogation that the defendant confessed without coercion and done so voluntarily, to the killing of April Church and Jamie Snow. While in the custody of the Sturbridge police and during the interrogation a State Trooper was also conveniently present with the arresting officer.

Still in the custody of the police the defendant being heavily intoxicated with alcohol and drugs he was coerced into making statements. The Officer from Sturbridge Police had knowledge of the defendants History of Alcohol and drug abuse, along with serious pyschological problems, because of the lengthy history of abuse. That during the several hours of interrogation the defendant expressed a need for help i.e. legal and psychological assistance. Once the defendant invoked his rights for assistance to counsel of medical. The Police must stop their questioning. The lengthy inter-

rogation caused serious emotional distress to the defendant.
whereas he was under the influence of Xanax and alcohol his
capacity was diminished, with his psychological disorder, the
baggering can  be construe as coercion and intimidation thereby
violating the defendant right to counsel.

Trial counsel Lu filed a motion to suppress the defendants
statement, after an evidentiary  hearing the motion Judge,
whom was also the trial judge denied the motion. Trial Counsel
failure to challenge the justice finding of facts. Pursuant to
an  interlocutory  appeal  before  the  single  justice  of  the
State  Supreme  Court,  thereby  rendering  counsel  as  defective
assistance of Counsel.

Trial  counsel  renewed  his  motion  to  suppress  and  Waiver
of the defendants Miranda warning, involuntary and unintelligent
statements made while under the influence of drugs and alcohol,
these  were  filed   and  renewed  just  prior  to  trial. Moreover
Counsel  filed  numerous  motions  in  ExParte  for  funds  for
Forensic  Pathologist,  Psychiatrist  and  Private  investigator.
There were many  Motions  filed  I.E.  Discovery, demonstrative
Aids etc.

From  the  onset  of  the  trial,  there  were  many  problems
with  news  media  coverage.  see,  [Tr  73-75;  109-111].  Even
throughout the jury selections there were issues with the  news
media [TR 436-464; 476-479; 696-97; 1028-30; 1116-1118].

Trial counsel failure to challenge the prejudicial hearsay statements made by family members and an alleged suspect of this crime. During the view an unknown person, not a party to this action , made highly prejudicial comments to the juror's about he defendant and what they should do. Although Trial counsel moved for a mistrial. see, [Tr. 805-810].

Trial counsel renewed a second request for mistrial on issues of the news media coverage. see, [Tr. 1015-28]. The Strategy of trial counsel must be construed as ineffective, when he failed to file an interlocutory appeal before the single Justice of the State Supreme Court. When the trial Judge denied the mistrial motion , as well as the motion to change venue based on issues of Jury biasness, unable to secure impartial jury, and news media coverage. see, <u>Sheppard v. Maxwell</u>, 384 U.S. 333, 351-57 (1966); <u>Commonwealth v. Long</u>, 419 Mass. 798, 802-07 (1995). Counsel failure to petition pursaunt to MGL c 211 § 3, denied the defendant his due process claims.

Trial counsel inefficiency carried over throughout the trial. Including but not limited to jury selection. whereas Counsel failed to properly use his preemptory challenges. The Court was forced to grant trial counsel additional challenges of cause. As Counsel overtly used the preemptory challenges , should have ben challenging under cause. Counsel frivoliously used all the preemptory, and never sought to keep track of what number of preemptory he used. see, [Tr. 440-42].

Trial counsel failed to establish any form of strategic defense. Especially since counsel filed numerous motions that were allowed for funding expert witnesses, i.e. psychaitrist, private investigator and demonstrative aids to assist him in the defendants plight to prevail. The only witness called counsel in this quest was a character witness, whom had shed no light on the whereabouts of the defendant on the day in question. see, Douglas v. California, 372 U.S. 353 (1963). The defendant must be afforded competent and effective assist-ance at trial and on direct appeal. Rodriquez v. U. S., 395 U. S. 327 (1969).

Requiring a disclosure of all errors that would be raised on appeals. The denial of the appeals did cause prejudice and has frustrated the defendant. As appellate counsel failed to raise all viable errors, thereby causing additional hurdles for the defendant to clear, because his rights were violated and denied at the earlier stages of the proceedings, at trial and on direct appeal. Coppegde v. U. S., 369 U. S. 438, 441 (1969).

II. Statement of Facts

From the onset of this action, serious problems were at issue with news media coverage [Tr. 73-81; 107-111(6/15/98)]. Trial counsel did motion the court to change venue and was denied. His basis was news media and impartiality of juror's. Even during the jury selection news media coverage was an

see, issues [Tr. 468-70; 476-79]. The jurors could not state completely if they could be impartial. Whereas the news media had briefed the facts of the case, just prior to trial and during the selection of the jury. Several of the jurors whom were selected had made comments. But during the process the Court did rehabilitate these potenial jurors. see [Tr.245-51] William Earley who was vague on what he read and as to his impartiality (Tr. 248); [Tr. 251-54] Thomas Foley citing too much detail on how the bodies were dismantled (Tr. 254); [Tr. 292-98] Robert Valetta stated from the beginning that he did not want to be there (Tr. 295), hearing that Defense Counsel Lu moved under challenge of cause (Tr. 296) was denied; [Tr. 299-303] Michael Marshall cited all that he read about the case in the news (Tr. 300), As Defense moved under cause and was denied (Tr. 302); [Tr. 303-09] Rebecca Sjorgren stated that it may be a bit difficult to stay impartial on the issues (Tr. 305), Once again Defense moved under cause and was denied (Tr. 306); [Tr. 348-55] Deborah Chapman [1/] heard of the issue by word of mouth (Tr. 352) and Defense moved under cause and was denied (Tr. 354); [Tr. 355-63] Mark Senecal did not want to be on jury (Tr. 359) Knew a lot of detail through the news media (Tr. 360) had news media issues (Tr. 362), defense failed  challenge under cause; [Tr. 458-79] Dermid Reardon

---

1/ Deborah Chapman was selected at the end of the trial as an alternate juror. But who can state how much influence she had prior to the delibe-ration. Especially since all the juror sit  in the jury room for coffee breaks, recess and for lunch.

family who was selected as the foreperson for the jury. This juror also had many issues with the facts in print by the news media. [Tr. 476-79]. Furthermore Ms. Kennedy was dismissed as a juror during the trial because of a death in her family. Counsel failure to object and move for a mistrial on all issues. Impartiality, and dismissal of a juror, causing his own ineffeciency as counsel.

## II. Statement of Facts at Trial

During the proceeding the Prosecution called numerous witnesses that made statement alleging what the defendant LeBlanc did. Some of these witnesses were related to the victims and some were suspect themselves.

### Brandy Trinque [Tr. 731-56]

Stated that when she arrived at the Jamie's house they all went to the porch. There was a person there she didn't know his name, but called him crazy and it was not the defendant.(Tr. 737-38), She also stated that Dave Riley was April's boyfriend (Tr. 736-37).

### Amy Clancy [Tr. 757-769]

She was at the house party at 9:30 PM. Bradley Soper was there and he told her to tell Jamie to set her ass home or he would kill her. she further stated they always had problems. (Tr. 763-66) She was asked what the yellow house was called , she stated a party house. (Tr. 767).

### Crystal Snow [Tr. 770-83]

Alleges that The defendant use to live in the first floor, and was moving out that day (Tr. 771-73). She further alleges that both Jamie and April were in Dave Riley's apartment (Tr. 774).

### Faith Houle [Tr. 784-835]

She alleges that April was with the defendant at approximately 6:00 PM (Tr. 787). Faith made a prejudicial statement. because of that prejudicial impact from her statement. defense Counsel moved for a mistrial (Tr. 805-11). defense also solicit from her that she had Psychological and drug problems that she was mad at the defendant, and that day she did not do drugs that day. (Tr. 834).

### Jeremy Houle [Tr. 836-845]

He alleges that the defendant was his Mothers boyfriend or something like that (Tr. 838) on that day the defendant was drinking (Tr. 840) During cross exam he was a bit nervous as he was never interview by the Police until ten (10) days before trial (Tr. 840.).

### Bradley Soper [Tr. 846-935]

Alleges that he age 33 was Jamie Snow's age 17 boyfriend (Tr. 846). He worked Montigny Landscaping until 4:00 PM. Then went to the family business (Fish store) and when he his cousin Randy, Lee, and Marcel St Laurent left they went to the Kahula restuarant. Then he went to the party for Heather Chet Sey girlfriend, and stayed (15) Minutes (Tr. 848-50). Later he called Chet and he came to get him they went to find the girls first to one motel then to another then went

to the Defendant's house, spoke with hims and asked about the girls. The defendant didn't know where they were, he had dropped them off in Sturbridge. (Soper) left at approximately at 9:00 PM (Tr. 856-59).

The following day (Soper) and Riley went back to the defendants' house at approximately 7:45 PM. Spoke and drank with him about forty-five minutes asking about the girls. (Tr. 860-61). Side bar was held [Tr. 862-65] on (Soper's) Criminal history, and about probation warrant that is lodged (Tr. 863).

(Soper) states now that after leaving the defendant home the first time he went to the town of Dudley looking for the girls at the Rainbow Gardens' (TR. 865-66) the Prosecution was allowed to rehabilitate their witness, prior to defense impeachment of credibility (Tr. 868).

(Soper) alleges they misconstrued all his statement while in custody at the Worcester County jail on unrelated charges. He was read his Miranda warning and gave a Ten (10) page statement over Two and one half hour interrogation. (Soper) tried to renege what was written as Defense cross-exam (Tr. 873-76). (Soper) statement were inconsistent during cross (Tr. 884-87). (Soper) stated during cross-exam that the Police and District Attorney attempted to the killings of the Girls on several occasions. (Tr. 896-99). Defense inquired about an Ax handle (Tr.900) he alleges he brought a weapon to the

defendants house (Tr. 902). Defense extracted that he had threaten Jamie Snow (Tr. 906-07), during this cross, defense also extracted that he threaten to flip Brandys' car over with the girls in it (Tr. 919). defense inquired and asked if he killed the girls (Tr. 624-26).

Chester Sey [Tr. 941-59]

He alleges that he Know the defendant Wayne Snow and Brad Soper they are his friends (Tr. 944). He when further to state that he seen the defendant at approximately at 5:00 PM riding a lawn mower near Fred's Variety Store and a Restuarant, and he didn't see him again after that (Tr.954-46).

(Sey) states that(Soper)arrived at the party. He wasn't sure of the time , but he only stayed Twenty minutes, then left. Approximately 9:30 PM (Soper) called for a ride to look for the girls, as (Soper) heard they were partying with the defendant. Upon picking up (Soper), we went to the Village and Coach Motel, and drove through the Pink Haven Motel parking lot . The left for the defendants' mothers' house where he was staying. (Sey) stayed in the car, the defendant was out speaking with (Soper) about the girls (Tr. 947-52).

The Prosecution asked about the defendants' sobriety, which caused a series of objection by defense (Tr. 953-54). Then (Sey) stated that he and (Soper) left the defendants home at 9:45 PM (Tr. 954).

-10-

David Riley [Tr. 960-83]

Stated that he is (37) and his girlfriend (April Church) is age (17). That he and (Soper) went to Dudley. the Rainbow Garden. But prior to that, they went to the defendants' place approximately 7:30 PM. They had Montignys' Landscaping truck. When they arrived at the defendant, they went to the back where the defendants trailers is. They asked if he seen the girls, as thay stayed and had a few beers with the defendant and then left about twenty minutes after their arrival. (Tr. 962-66).

During cross-exam (Riley), stated that he and (Soper) went looking for the girls on thursday,, that (Soper) was upset that they weren't around, as they had palns (Tr. 967-68). Riley further alleges that he gave the police a fourteen page statement, and they asked his involvement (Tr. 969-70).

Wayne Snow (Tr. 971-82; 1264-92)

A side bar was held on a variety of issues regarding the hostility and testimony of (Snow), (Tr. 971-75). Snow took the stand on two occasion. see, (Tr. 1264- et. seq.) He stated that he is Jamies' father, and that he knew the defendant on August 1, 1996. The defendant was in the yard at approximately 3:00 PM on his riding lawn mower. The Girls were talking with him, then the girls left twenty minutes later as they were done talking to the defendant (TR. 976-82).

He further stated that on August 1, 1996, at approximately 10 PM, he did see (Soper), that he was with him at 8:30 PM

until 11:30 PM (Tr. 1265). That (Soper) only left him for a short period of time with (Chet Sey), and they came back at approximately 10 PM then stayed until 11:30 PM. Once again a side bar was held on issues of (Snow). (TR. 1266-78). Snow continued to vouch for (Soper) reputation being his friend through high school. As defense counsel objected on several occasions to the questions by the prosecution, and moved to strike the testimony of (Snow) during direct-exam (TR. 1278-85).

(Snow) was hostile towards the defense, during the cross-exam. It was (Snow) opinion that (Soper) was not violent towards any of the woman that he dated.(Tr. 1285-88). (Snow continued to vouch for his friend (Sopers') reputation even through his Old friend (Wells Whitney) testimony stating the (Soper) can show real potential criminal threats, and is capable to snap under stressful situation , especially when he is drinking. No matter what witness took the stand and spoke against (Soper) violence  against woman. (Snow) would continue to vouch for his friend (Soper) Was Not violent. (Tr. 1288-92).

Loretta Menard [Tr. 1199-1215]

She stated that she lived on the second floor of the yellow house (tr. 1200). She seen the defendant on his tractor mowing lawns (tr. 1201). She was hostile as a witness and stated that the defense attempted to acquire her as their witness, but she refused to testify for the defense.

GLen Whitney [Tr. 1215-38]

Stated that he knew (Soper) seen and spoke with him about twenty minutes on July 31, 1996, while he was in Chet's car (Tr. 1215-18). That he and (Soper) spoke about his girl being much younger, than (Soper) told him that he got rid of the problem (Tr. 1219-23). During cross-exam (Tr. 1225). (Glen) stated that (Soper) has conveyed something about Jamie, as he tried to be careful, as not to incriminate himself (Tr. 1228-29). THe (Soper) reiterated that he took care of that a few hours ago (Tr. 1229-30).

Wells Whitney [Tr. 1239-45]

Wells' is (Glens'). He stated that he spoke to the police about the conversation he and     (Glen) which involved (Soper) (Tr. 1239). Cross-exam (Tr.1240).   Wells' has known (Soper) for fifteen years. (Soper) use to work for him. (Wells) Knows of (Sopers') reputation (Tr. 1240-41). He Further stated that (Soper) is a violent Person, and that was the entire reasoning of (Wells), in speaking with the police. (Wells), mentioned what (Soper) stated to his nephew, that he took care of that problem a couple of hours ago (Tr. 1243-44). He went further to state that (Soper) has a razor edge temper (Tr. 1244).

Calvin Montigny, [Tr. 1246-60]

He stated that he's a landscape contractor, and that (Soper) worked for him for about a year. He further stated that he owned a Ford 250 truck that he used for his business (Tr. 1246-48). When (Montigny) was asked if (Soper) worked

on August 2, 1996, said no, as (Montigny) had went away for the weekend and start early Friday. He further alleges that he did not allow (Soper) to drive the truck because he had no license, and did want to lose the landscaping truck. He had learned that (Soper) went to the garage and took the company truck while he was away. (Montigny) was forced to end his trip and pick up his truck at the Police Station in Dudley. Where (Soper) was arrested for diving under and use without authority (tr. 1249-52).

## III. Argument

Pursuant to Mass. R. Crim. Proc. Rule 30 (c), The Court may grant a new trial " at anytime where it appears that justice may not have been done". Comm. v. Hubbard, 357 Mass. 160, 174 (1976); Comm. v. Gaggliardi, 21 MA. App. Ct. 439 (1980). The Judge should make a finding of facts, necessary to resolve the defendants' allegation of errors of law. Comm. v Miranda, 22 Ma App Ct 10, 21 (1986), where there is a genuine question of guilt or innocense that the error was significant in context, that the results would have been different but for the errors of law. Comm. v. Grace, 397 Mass. 303, 305 (1986). The Trial Judge has the discretion to decide a new trial motion    , on the basis of the affidavit or hold an evidentiary hearing.

Whereas the defendant has raised substantial issues, he is entitled a hearing. Comm. v. Stewart, 383 Mass. 253, 257 (1981). The motion for new trial raises serious constitu-tional issues, an a evidentiary hearing is mandated. Comm. v.

Licata, 412 Mass. 654, 660 (1992) Where evidence shows that the "trial was infected with Prejudicial and constitutional errors.

The judge has no discretion to deny a new trial. Comm. v. Stewart, supra  at 257 [Quoting Earl v. Comm., 356 Mass. 1818, 184 (1987). Accord Repoza v. Mass.  484 U.S. 935 (1985). A new trial is warranted when a defendant can show counsel was ineffective in his representation. Comm. v. Kelliher, 395 Mass. 821 (1985); Comm. v. Aviles, 31 Ma App Ct 244; 40 Ma App Ct 440 (1996); Comm. v. Whyte, 43 Ma App Ct 920 (1997).

## Trial Court Erred in the Denial
## of the Defendant Motion for Direct Verdict

There was insufficient evidence to establish guilt. Thus United States Constitution prohibits a criminal conviction of any person beyond a reasonable doubt. In Re Winship, 397 U.S. 358 (1970); Jackson v. Virginia, 443 U.S. 307, 314 (1979).

[The] question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational tier of facts could HAVE FOUND THE ESSENTIAL ELEMENTS OF CRIME, BEYOND REASONABLE DOUBT. Comm. v. Salemme, 395 Mass. 594, 595 (1985). To sustain the denial of a direct verdict is not enough . . . to find that there (is) some record evidence, however slight . . . " It must find, there is enough evidence that could satisfied a rational tier of facts of each element beyond reasonable doubt. see, Comm. v. Mazza,

399 Mass. 395, 399 (1987), [Quoting Latimore, 378 Mass. 671, 675-78 (1979)].

Additionally, the evidence and inferences permitted to be drawn, must be sufficeint force to bring the mind of ordinary intelligence and sagacious to persuasion of [guilt]. "beyond reasonable doubt". Comm. v. Lombard, 419 Mass. 585, 599 (1995), [Quoting Comm. v. Cooper, 264 Mass. 373 (1926)]; Accord Comm. v. Jackson, 417 Mass. 830 , 842 (1994). Jurys are not permitted to pile inferences upon inferences, they must be drawn properly, not by mere speculation or conjecture. see, Mazza, supra at 399.

In Berry v. Comm., 393 Mass. 793 (1985), the State Supreme Court, restated a long standing rule that " . . . if upon all the evidence, the question of guilt of the defendant is left to conjecture or speculation. It has no solid foundation in established facts. A verdict of guily can not stand". I.D. at 794 [Quoting Comm.v. O'Brien, 305 Mass. 393, 401 (1940)]; Comm. v. Fancy, 349 Mass. 196 (1965); Mazza, supra at 399; Salemme, supra at 595.

The Commonwealth proceeds against "LeBlanc" on the theory of Two counts of first degree murder of [Two] young girls, whom were alleged last seen with the defendant.

In support of incredibility and speculative theory, the Commonwealth submitted hearsay evidence that the defendant murdered the [two] young girls by numerous family and friends, whom alleged that "LeBlanc was the last person seen with them just prior to their death.

The prosecution offered no factual evidence that "LeBlanc" comitted the crime. Prosecution only suggested the defendant murdered the [two] girls through prejudicial coerced statements of the defendant, while under the influence of alcohol and drugs, and third party hearsay statements, given under the guise of promises of rewards and inducements to (Soper).[2]

The SJC has examined simular case, and has found the evidence insufficient and reversed the conviction. see, Mazza, supra.

Mazza, the victim was found murder in a parking lot. The evidence introduced that Mazza, was seen in the parking lot at the time of the murder. Mazza, had motive (a dispute over a woman). The simularities are a like the defendant was allegedly seen with the victims. That during interrogation of more than six hour while under the influence of alcohol and drugs he was coerced into making statements, after previously asking for help! legal and psychological.

The SJC deemed in Mazza, that the evidence was insufficient to support the conviction. Mazza, at 398-400. Between the news media commentary and the piling of inferences upon inferences. This case is simular to Mazza. The Court in Mazza, found the evidence insufficient. also see, Salemme, supra at 601; and Berry, supra at 795-96.

---

[2] Bradley Soper, is the boyfriend of Jamie Snow, one of the victims of this action. Initially he was suspected on killing the Two girls. He has priors in threatening Brandy Trinque and Jamie Snow while in Brandy's Car [Tr. 624-26; 906-07; 919].

The Commonwealth must carry the burden of proving it's case by introducing affirmative facts and evidence which allows, Judges' to find guilt beyond reasonable doubt. <u>Salemme</u>, supra. A guilty verdict cannot be handed down, when evidence is conjectural and does not point conclusively towards any guilt by the defendant. whereas the evidence against "Leblanc" is conjectural, and there is not one scitilla of evidence which proves that he murdered Church and Snow.

The Commonwealth case based solely on conjectural circum-stantial evidence, repleted with inflammatory fictious state-ments from (Soper) whom was a suspect of this crime. [Tr. 919]. Instead of the tier of facts that would have scrutinized all testimonial evidence, which merely alleges what the de-fendant did or said. . . Leaving the door open to conjecture. It is factual the murders did happen, but by whom ? " evidence that goes beyond showing "LeBlanc" had opportunity to commit the crime is insufficient" <u>Comm. v. Curtis</u>, 318 Mass. 584, 585 (1945). For the jury have found the facts acording to the Commonwealth Theory. The Jury inevitably engaged in imper-missible surmise and conjecture.

Since conjecture, surmise and speculation can never be a basis for a criminal conviction. <u>Salemme</u>, supra. There is no evidence that points conclusively towards " LeBlanc" of any guilt. the conjectural statements are inadmissible as a matter of law. The tier of facts has no basis to affirm a convict against "LeBlanc".

-18-

The Introduction of Unsubstantiated
and Hearsay Statements denied   the
Defendant his right to a Fair Trial

The Theory of circumstantial evidence, hearsay or other-
wise used at trial convicting "LeBlanc" is inadmissible.
The Parrallel of rules between key Prosecution's witnesses,
in this case raises serious questions about the credibility,
and the alleged good faith investiagtion. e.g. Kyles v. Whitley
115 S.CT. 1555, at 1571 (1995). A jury would be skeptical of
the investigation   methods used  and  what led up to solving
the case.

   Although the investigation commenced with (Soper) [3/],
because of the relationship with one of the victims. It slowly
proceeded with family and friends of both victims, as well
as friends of (Soper).

   Many of the statements given to the police did infer
that (Soper) had threaten Jamie on numerous ocassion [Tr. 763-
66, 906-07, 919, 1243-44].Not only did he threaten Jamie,
but her girlfriends if they were keeping her out. see Brandy
Trinque [Tr. 731-56]. When Glen Whitney had ask about his
relationship with Jamie. He stated he took care of the problem
a few hours ago. [Tr. 1229-30]. Wells Whitney went to the
Police on his on initiative, to convey what he was made privy
too and being a friend of (Soper's) for  fifteen years. He informed

---

3/ Soper has had  on numerous occassion violent relationships with many
on the women he dated. On many incidents he has threaten not only Jamie
but also her friends [Tr. 906-07 and 919].

them about his violence with woman [Tr. 1240-44]. Even (Soper's) own testimony had been extracted during cross-exam, and that he was initially a supect [Tr. 624-26, 906-07, 919].

Although innumerable testimony of others offered as to the event. The statements made, only placed the defendant in the area approximately 3:00 PM.

The prosecution offering testimony from hostile witnesses and one whom originally a suspect himself of this crime. The statement were shrouded with allegations. the only alleged direct testimony was that by a police officer whom was involved in the coerced testimony of "LeBlanc" during interogation. The Police had knowledge that the defendant had been heavily drinking and using drugs 5/ . The interogation was six hour process, questing and badgering the defendant, as he was injured drained and distaught. Having a history of Mental health issues drinking and using drugs. He sought help legal and psychological during the interogation.

It is disingeniuos to say that the statement made under the influence  by the defendant was high prejudicial and could not be taken in a limited way by the juror's.

These statements were offered by the interogating officer, taken as truth as the matter. Which put the defendant in an impossible situation. That the defendant had testified it would allow the prosecution to shift the burden. As no

5/ the defendant has been a heavy alcohol and drug user, his choice was Xanax

-20-

direct testimony was offered. other than the coerced and involuntary statement given during the interogation while the defendant was under the influence, Comm. v. Child, 413 Mass. 252, 261-63 (1992).

This error is that of Constitutional issue to determine whether the error is harmless beyond reasonable doubt. The reviewing Court must look at the evidence and record as a whole to determine the impact on the jurors. Morgan v. Hall, 569 F2d 1161 (1978); Delaware v. Van Arsdall, 475 U.S. 673 (1986).

The evidence was extremely prejudicial to the defendant, the unqualified coerced statement and hearsay, which was inflammatory and the only evidence that was detrimentally introduced against "LeBlanc".

Moreover the hearsay testimony was essential to the prosecution in maintaining their circumstantial theory, before the jury that the defendant possessed the requisite Mens Rea to commit the specific crime charged. U.S. v. Moody, 903 F2d 321, 329 (1990).

The admission of hearsay statements were supplied, and the Courts limited the confrontation of key witnesses. Thus in the absence of overwhelming guilt. The conviction must be reversed, as the verdict cannot be relied as just. Comm. v. DeMars, 38 Ma App Ct 596 (1995); Comm. v. Cohen, 6 Ma App Ct 653(1978) and Comm. v. Williams, 378 Mass. 217 (1979).

The Prosecution Withheld Exculpatory
Evidence that Denied the defendant a
Fair Trial

Prosecutors are required to disclose to a defendant all evidence in their possession or control. Comm. v. Baldwin, 385 Mass. 165, 177 (1982). A prosecutor has a duty to disclose evidence in response to no defense request or a general request extends to all evidence in possession of the prosecution or anyone acting on behalf of the Commonwealth including the police. Kyles, supra at 1567-68; Brady v. Maryland, 373 U.S. 83, 87 (1963); Comm. v. Tucerri, 412 Mass. 401, 405-07 (1992); Comm. V. Daye, 411 Mass. 719, 734 (1992); Comm. v. Gallarelli, 399 Mass. 17, 20 n. 4 (1984). It is well settled that [e]vidence tending to impeach the credibility of key witnesses is . . . exculpatory. Comm.v. Collins, 386 Mass. 1, 8-9 (1982); Napue v. Illinios, 360 U.S. 264, 269 (1959).

(Soper) was originally suspected in the murders. Mainly because of his history of violence with woman. The defense had the right to know of all promises made with (Soper) by the prosecutor, for his testimony. It is remarkable on the part of the prosecution in relying on key witnesses in this case, and their incredible range of knowledge. Kyles at 1571; Davis v. Alaska, 415 U.S. 308, 317 n.6 (1974), and Comm. v. Lewin, 405 Mass. 566, 582 (1989).

Withholding of evidence by the prosecution favorable to the accused violates due process. Where evidence is material to guilt or as to punishment, irrespective of good faith or bad of the prosecution. Brady, supra at 87. Even in absence

-22-

of a defense motion. see, <u>U.S. v. Agurs</u>, 427 U.S. 97, 104
(1976); <u>Tucerri</u>, at 405-7. Requires disclosure of all evidence,
even after a conviction. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427
(1976). That the results of the proceedings would have been
different, probability sufficient to undermine confidence
of the outcome of the trial. <u>U.S. v. Bagley</u>, 473 U.S. 667,
682 (1985); <u>Tucerri</u>, at 412 and <u>Kyles</u>, at 1566, Courts
explained:

> "Question is, not whether the defendant
> would more likely than not received a
> different verdict with the evidence,
> but in the absence did he receive a
> Fair Trial"

In Addition the Court explained the <u>Bagley</u> standard
' is not sufficiency of evidence test' <u>I.D.</u> The due process
is violated, when the prosecutor surpresses evidence. Which
could reasonably put the case in such a different light, as
to deter confidence in a verdict. <u>Kyles</u>, AT 1566: <u>Collins</u>,
at 8-9 (Concluding the surpressed impeachment evidence was
material because the "Keystone" of prosecution case and
" The promses of all rewards or inducements for their testimony
would allow the jury to estimate reliability of truthfulness
and credibility. Which may be determnative to "LeBlanc's"
guilt or innocence. Upon such subtle facts, the possible
interest of the witnesses to testify falsely, that "LeBlanc"
life and liberty depends). <u>Napue</u>, at 269; <u>Agurs</u>, at 104-06;
<u>Tucerri</u>, at 410 n. 9; <u>Bagley</u>, at 676-77 (citing the impeachment
falls within <u>Bagley</u> rule). see, <u>U.S. v. Snell</u>, 899 F. Supp.
at 1721 n. 6 (1995).

-23-

In 1992 SJC rejected Bagley as being too restrictive and enunicated a common law standard, that if undisclosed evidence would have efffected the jury an not the Judge. Tucerri at 411-13, and under the law . The evidence is "Material" and hence id.withheld it is cause for a reversal ID at 413. Thus the nondisclosure requires the allowance for a new trial, and absent evidence played an important role in the deliberation and conclusion for the jury ID at 414.

The prosecution failure to disclose all material evidence on important witnesses that testified at trial. The surpression of evidence that would impeach witnesses that testified under a guise of promise of rewards or inducements. Said denial of evidence not only deprived the defense evidence, but also denied the evidence existed. Agurs, at 107 , Collins, at 8-9 [Quoting Comm. v. Gilday, 382 Mass. 166, 175 (1980)]; U.S. V. Giglio, 405 U.S. !50, 155 (1972).

This evidence is relevant to credibility and consciousness of guilt by prosecution witnesses, a scam by a specific witness to protect their own interest, covering up their ill deeds. Comm. v. Toney, 385 Mass. 575, 583 (1982); Coom. v. Connors, 18 Ma App Ct 285 (1984).

Had the jury been aware of all deals with the prosecution witnesses, there is a likelihood the verdict would have been different. U.S. v. Iverson, 637 F2d 799, 805 n. 19 (1980); Mooney v. Holohan, 294 U.S. 105 (1935); also see, Brady, and Giglio, supras'. It's reversible error for the

Prosecution to withhold evidence, thus the conviction must be reversed, verdict set aside and a new trial ordered pursuant sixth and fourteenth amendment United States Constitution, and article I, XII, XV of the Massachusetts Declaration of Rights.

Defendant was Denied Effective
Assistance of Counsel at Trial
and on Direct Appeal.

The measure of effective assistance of counsel is whether counsel performance fell "Measurably below what is expected from an ordinary fallible lawyer" Comm. v. Saferian, 366 Mass. 89, 96 (1974). The defendant must show that better work might have accomplished something material for the defense. Comm v. Satterfield, 373 Mass. 109, 115 (1977). Must show the action which the defendant claims, counsel should have taken could make a difference. Comm. v. Frisino, 21 Ma App Ct 551, 552 (1984); Stickland v. Washington, 466 U.S. 668 (1984) [Defining simular standards under Sixth amendment], (A) defendant need not show that counsel deficient conduct more likely than not altered the out come of the case . . . the proceeding can be rendered unreliable and hence itself be unfair. Even if erors of counsel cannot be shown by pre- ponderence of evidence to have determine the outcome. Strick- land, at 693.

In this case at bar, there were extremely inflammatory statements and publicity by news media. The impact highly prejudicial. Sheppard v. Maxwell, 384 U.S. 333 (1966); Comm. v. Susi, 394 Mass. 784, 477 N.E. 2d 995,998 (1985), See, [Tr. 78-79; 107-11; 476-79 and 691-703].

-25-

Moreover the prejudicial hearsay evidence, that had impact on the jury. Thus counsel failure to secure all materials and agreements by prosecution witnesses, undermine proper functioning of the adversial process, that the Court relied upon as just result. Kimmelman v. Morrison, 477 U.S. 365.377 (1986), and Strickland, at 685-86.

> Trial Counsel was ineffective for
> failing to object to Irrelevant
> Prejudicial News Media Statements
> and hearsay evidence.

The exercise of the utmost skills at trial is insufficient if counsel before trial fails to undertake necessary preparations and investigation for the defense.

In this case counsel filed preliminary motions. Certainly this discovery should have made a difference in preparation for a tactical defense. But for counsel failure to make all reasonable inquiries in all defense's, thereby denied the defendant effective assistance of Counsel. Sneed v. Smith, 670 F2d 1348, 1353-54 (1982).

In Comm. v. Haggerty, 400 Mass. 437 (1987). Counsel was ineffective, because he failed to investigate a realistic defense for the defendant charged with murder.

Here Counsel failed to follow through with the motions filed and estabilsh a tactical defense. Thereby denying the defendant his rights to a fair trial.

During the trial, counsel made seasonal objections on prejudicial statements and the publicity. [Tr. 776-83; 1037-46; 1186-90; 1267-69; 1327; 1402-14, and 1621-23]. But counsel failure to strongly and clearly object to inadmissible statements by prosecution witnesses, or publicity issues, could

have not been a strategic or tactical decision demonstrating his ineffectiveness. Comm. v. White, 409 Mass. 266.272-73 (1991); Comm. v. Gill, 37 Ma App Ct 457, 466 (1994).

The prejudicial news publicity and inflammatory evidence played in the defendants conviction. The serious, inattention, inefficeincy and incompetencies of counsel, fell measurably below that what might be expected form an ordinary fallible lawyer. Which deprived the defendant, an otherwise available grounds of defense. Saferian at 96; White at 272-73; Gill at 466 and Comm. v. Whyte, 43 Ma App Ct 920 n. 1, 921 n. 3 (1997).

Counsel failure to sequester all Commonwealth's witnesses, which is a fundamental duty, particularly in a case such as this. especially when the case is based on circumstantial theory and credibility of hearsay evidence from key prose- cution witnesses. The sequestration exercises restraints on witnesses "Tailoring" their testimony, that is less "Candid". Meggs v. Fair, 621 F2d 460 (1980), accord Gerder v. U.S., 425 U.S. 80 (1976); Comm. v. Kelleher , 395 Mass. 821 (1985); Comm. v. Gogan, 389 Mass. 255 (1983); Comm. v. Bianco, 388 Mass. 358 (1983). The inability of trial counsel is the issue here. His failure to petition the single Justice of the State Supreme after a Courts deniel to change venue, based upon the high publicity of this case, and the potential to sway the jurors prior to selection. [Tr. (6-15-980 73- 81; see other dates preceeding Tr. 107-11; 245-51; 254; 300; 360; 468-70; 476-79; 1028-30; 1387-94; 1730-31 and 1795-96].

Furthermore, the limited confrontation allowed by the court. The hearsay and lay opinion violated the defendants rights to a fair trial. Counsel knew or should have known it is is clearly hearsay rule, renders extra judicial inadvertance and misbeliefs they were offered to prove the asserted matter contained in the statement. Comm.v. Repoza, 382 Mass. 119 (1986); Comm. v. Lewis, 12 Ma. App. Ct. 562 (1981), and White, supra at 920 n. 1, Article Xii of the Massachusetts Declaration of rights. THis clause serves to facilitate truth seeking func- tionsat trial. Therefore counsel failed to move pursuant to Rule 15, interlocutory appeal, to change the venue, denail of the suppression motion, News publicity, and hearsay evidence by third parties. Denied the defendant a fair and impartial trial. Sheppard, supra at 350-52 and 359; Comm. v. Debenedetto, 414 Mass. 37 (1992); Comm. v. Armirault, 424 Mass. 618 (1998) [quoting Comm. v. Conefrey, 410 Mass. 1, 14 (1991)] Counsel's failure and inattention, did put at " risk both the right of, ample opportunity to meet the prosecution case, and the re- liability of testing the adversial process. Kimmelman, supra. at 2589". Counsel's action was not sound strategy Id. at 2596. Ther is no tactical or strategic defense by trial counsel. Especially since counsel used only the witnesses furnished by the Prosecution. The only witness called, was a character witness [ Tr. 1480-87 ], on behalf of the defense. Then shortly thereafter counsel, rest for the defense. Counsel did deny the defendant a substantial and otherwise availiable grounds

of defense. see, <u>Saferian</u>,<u>6/</u> supra.

> Trial and Appellate Counsel were
> Ineffective for Failure to Chal-
> lenge the Sufficiency of Evidence.

Reasonableness of counsel performance must be evaluated, the facts that this case was tried by news publicity and on a circumstantial theory, of coerced and hearsay evidence.

Trial counsel failed to challenge the sufficiency of evidence pursuant to Mass. R. Crim. Proc. Rule 15, and MGL c 211 S et seq. superintendency of powers.

Counsel had knowledge that (Soper) originally was suspected in the murders. (Soper's) testimony laced with promises of rewards and inducements [Tr. 76-83; 88-89] giving a "ten Page Statement", that he alleges that was misinterpreted.

As Amy Clancy verified that (Soper) threaten [Jamie] [Tr. 763-66], also Wells Whitney corroborated, what Amy. Brandy Trinque and Glen Whitney , stated that (Soper) made threats [Tr. 1228-30; 1240-44], and hearsay, hostile statements of (Houle) [Tr. 805-11]. As she was mad at the defendant. Menard [Tr. 1201-03] statements had a prejudicial impact on the jury as the were highly inflammatory, coupled news pub- licity , thus counsel failure to surpress these inflammatory comments rendered counsel as defective in his assistance.

Appellate counsel failed to challenge the sufficiency

---

6/ let it be noted, it makes no difference whether a claim of ineffective- ness is based upon Federal or State grounds. [I]f Saferian's test is met the federal test is met as well. <u>Comm. v. Fuller</u>, 354 Mass. 251, 256 n. 3 (1985)

of the evidence and to raise all viable issues on direct
appeals. see, [App. Br. 15-22]. There were argument that should
have been raised **i.e.** pervasive and prejudicial publicity.
when the trial court erred in denying the Motion to change
Venue based on the publicity causing serious prejudicial impact
not only during jury selection, but throughout the trial.
see, <u>Sheppard</u>, and <u>Susi</u>, supra's. Appellate counsel failure to
raise effective assistance of counsel at trial. Because the
defendant has a right to a fair and impartial trial. they
shall endure the right to effective assistance , at trial
and on direct appeal. <u>Evitts v. Lucey</u>, 481 U.S. 387 (1985);
<u>Gray v. Greer</u>, 800 F2d 644, 646 (1986), and <u>Kimmelman</u>, at 2584.

Trial Counsel Inefficiency was
Established by his Failure to
Secure All Discovery that Could
Exculpate the Defendant.

Counsel Incompetency in securing essential discovery,
that could have exculpate the defendant, thereby denied him
his rights to a fair trial. <u>Brady v. Maryland</u>, 373 U.S. 83, 87
(1963); <u>Quimette v. Moran</u>, 942 F2d 1 (1990), and <u>Kyles</u> at
1566, <u>Tuccerri</u> at 412.

Counsel filed numerous motions, discovery, expert wit-
nesses and other forensic specialist, as well as the criminal
record of the prosecutors witnesses. Counsel never sought
to follow up on most of his motions and/or use said material
to establish a tactical or strategic defense. <u>Satterfield</u>,
at 115. Counsel own actions would have made a difference in
the outcome, if counsel done what might be expected from an

ordinary fallible lawyer. Strickland, at 694. Counsel failure can be construed as negligent, his failure created harm and undermine the confidence and the outcome at trial. Kyles, at 1566.

> Appellate Counsel Failed to
> Raise All viable Issues on
> Appeals.

The right to effective assistance of counsel is guaranteed by the United States Constitution, is extended to a defendant on his first and direct appeals. Kimmelman at 2594; Evitts, at 401 and Gray , at 646. Appellate Counsel raised a few issues on appeal [App. Br. 15-22], and sought not to raise the viable issues on Direct appeals. Appellate counsel hampered the defendants own points of law that are now being raised in this petition and motion for a new trial.

Appellate counsel failure to address issues of Constitutionality, **i.e.** ineffective assistance of counsel, prejudicial publicity that created a serious impact in jury selection and throughout the trial. The courts failure to take action in these matters. Appellate counsel failure to raise and expound upon all viable issue did deny the defendant rights. Especially since counsel raised his own argument [App. Br. 15-22].

The Same standard applies in assessing inefficiency of appellate Counsel. Comm. v. Sowell, 34 Ma App Ct 229, 231 (1993); Strickland, at 693, and Saferian, at 96.

The Courts stated that [F]ederal Courts in addressing ineffective assistance of appellate counsel under the Strick-

land standard has focused on whether counsel failed to raise obvious and significant issues . . . which . . . may have resulted in a reversal of the conviction or order a new trial . . . Sowell, at 232 [Quoting Gray, at 646].

The assessment encompasses a comparison on the issues that were raised, with the issues that were not. When ignored issues are clearly stronger than those, that were presented on appeals. The presumption of effective assistance is over-comed. Gray, at 646. Clearly the merits and issues raised herein are arguably strong, if not stronger than the weak issues raised on appeals.

SJC held in Comm. v. Cardenuto, 406 Mass. 450 (1990). That counsel was ineffective for failing to appeal the denial of a motion for required finding of not guilty, where evidence was insufficient to sustain a verdict. The Eleventh circuit court of appeals held that counsel was ineffective for failure to challenge the sufficiency of the State's evidence, which was entirely circumstantial and insufficeint to exclude every Hypothesis, except guilt $\underline{7/}$ . Holsclaw v. Smith, 822 F2d 1041 (1987), But for counsel failure, the results would have been different. This is surely a case, where their's a sufficient showing that better work might have a accomplished something material for the defense. Comm. v. Barrett, 418 Mass. 788, 796 (1994).[quoting Satterfield, at 115]. With the inadequacies

---

7/ The exclusion of every reasonable Hypothesis except guilt, appears to be
  firmly rooted herein Massachusetts, Comm. v. Shea 324 Mass. 710 (1949)

of appellate counsel describe herein, and denial of fulfillment of the sixth amendment right to effective assistance. No attorney has vigorously advocated the defendants case as defined in Strickland, at 694; Johnson v. Singletary, 883 F. Supp. 1535, 1545 (1995).

Trial counsel failed to strongly object to the introduction of prejudicial hearsay evidence coupled with the news media publicity [8/].

The prejudicial hearsay evidence, arguably consitute the only evidence offered in this case. Bolander v. Iowa, 978 F2d 1079 (1992), [Failure to object to prejudicial hearsay, which was the principal evidence against the defendant., this is ineffective assistance]. Whyte, at 920-21.

The error by appellate counsel furher compounded, ineffective assistance for failure to raise and challenge the sufficiency of evidence, and inefficiencies of trial coun-sel. The prejudicial evidence left unchallenged reached the jury. Cardenuto, at 454 [failure of counsel performance amounted to ineffective assistance of appellate counsel]. the combined inadequacies performed by trial and appellate counsels amounted to deficient representation, which fell measurably below that what might be expected of an ordinary fallible lawyer. Saferian, at 96. Deprived the defendant an otherwise available ground[s] of defense Id. Here counsel simply fail[ed] to provide adequate and legal assistance. Stricland, at

8/ The news publicity was not free from prejudice. Because of the publicity the jury's verdict was not solely based on the evidence in open court, but from outside sources. Marshall v. U. S. 360 U.S. 79 (1959).

695, [quoting <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344 (1980)].
Counsel was not functioning, as such, which is guaranteed
by the sixth amendment. Counsel's inattention outlined herein,
creates " a reasonable probability that, but for counsel un-
professional errors" the result would be different.<u>Strickland</u>
at 697.

Consequently most defendants will rarely know that the
representation has been incompetent, until after he begins
his colateral review. Either with pro-se assistance or new
counsel. <u>Powell v. Alabama</u>, 287 U.S. 43, 53 S.Ct. 55, 64 (1932)
and <u>Kimmelman</u>, at 2585.

Massachusetts Court of Appeals has cited in <u>Comm. v.</u>
<u>Miranda</u>, 22 Ma App Ct 10, 22 (1986). Where counsel failed
to raise critical issues on appeals, the chief victim is likely
to be the defendant. In <u>Comm. v. White</u>, 409 Mass. 266, 272-
73 (1991). Failure to raise any of the viable issues, must
be viewed as "Manifestively Unreasonable".

> The Prosecution knowingly, willfully
> and Intentionally Withheld Exculpa-
> tory Evidence that Would have Impea-
> ched Their witnesses.

The prosecution withheld facts of (Soper) and other
prosecution witnesses. In <u>Kyles</u>, supra. the Court held because
of an independent materiality evaluation, rather than cumul-
ative evalaution, required under <u>Bagley</u>, supra. see, <u>Kyles</u> at
1569 analysis of the claims of misconduct under the " Estab-
lished Rule ", the cumulative effect of all . . . evidence
suppressed by the government to withhold information that is
material. <u>Kyles</u>, at 1560.

The cumulative effects of the evidence withheld, " Could reasonably be taken to put this case in such a different light and undermine the confidence in the verdict. Kyles at 1566 9/. Had the information been "disclosed and used effectively, it may [have] ma[d] e the difference between an acquittal or conviction." Bagley at 676. Taken as a whole, the evidence would significantly discredit the prosecution witnesses. The Napue Court Recognized that:

> "Jury's estimate truthfulness and reliability of a given witness, maybe deteminative of guilt  or factors ats the possible interest of the witness, in testifying falsely that the defendsants life or liberty may depend."

Id. Failure to disclose evidence   shedding light on " Possible interest" of the prosecution witnesses   in testifying, mandates a reversal.

A reversal is required as the prosecution surpression of the evidence 10/ and misleading arguments that Bolester[ed] the credibility of their own witnesses . . . Impair[ed] the defendant defense. . . and attack thereon . . . Comm. v. Connors 392 Mass. 828, 842 (1984) [Emphasis added]; Giglio at 154; Napue at 269, and Agurs at 103.

---

9/ The Court cannot conclude that counsel failure to raise the discovery issues are not viable. this does not absolve the prosecutor of his duty with disclosure of "Materiality" thus prejudice analysis must apply. Bagley at 682 and Kyles at 1566.

10/ The prosecutor duty to disclose all agreements of it's witnesses: even agreements that are not Quid pro Quo Basis, and evidence is relevant in the jury's deliberation.U.S. V. Turner, 456 F.Supp 583, 605(1979) Prosecution vouched for his witnesses, left an impression on the jury, that his witnesses were telling the truth. Bagley, at 684; Iverson, at 805 n. 19; Brady, Mooney, and Giglio. also see, U.S. v. Polizzi, 801 F2d 1543, 1550 (1986) it is reversable error, withholding evidence form the defense.

Prosecution Permitted Hearsay Evidence
that was Prejudicial to the Defendant,
Violated his rights to a Fair and Im-
partial Trial.

The Prosecution allowed prejudicial hearsay into Evidence [Tr 771-783; 787; 805-11; 971-82;1201; 1274-78; 1609-13 and 1615-21], the limited range and lattitude allowed in cross-examination, prohibited the defense inquiry. Smith v. Illinios, 390 U.S. 129, 131 (1968); Gordon v. U.S., 344 U.S. 414, 417 (1953); Davis v. Alaska, 415 U.S. 308 (1974).

Illisuion created by the prosecution with hearsay evidence and withholding evidence that is "Materiality" caused serious flaws in the truth seeking of the trial by the prosecution ensur[ing] the credibility of his witnesses. Kyles at 1566-71; Collins, at 8; Levin at 582. As cited in Comm. v. Repoza, 382 Mass. 119 ( 1982 ), third party declaration are clearly hearsay, cannot be introduced at trial. Lewis at 562 and White, at 921. It is clearly plain error, and the prejudicial impact mandate relief in this case. The hearsay evidence tainted with promises of rewards and inducements to prosecution witnesses, coulped with the inflammatory publicity traced to the prosecution, as well as the defense, which was most incriminating evidence. Sheppard at 360-61; Stroble v. California, 343 U.S. 181, 201 (1952); Cohen, at 653; Williams, at 217 and Whyte, at 920-21.

-36-

> Trial counsel Misuse of Preemptory
> Challenges, violated the Defendants
> rights pursuant to Article XII  of
> Massachusetts Declaration of rights
> Sixth and Fourteenth Amendment.

Trial Counsel, engag[ed] in unconscious preemptory challenges that should have been challenged under a challenge of cause.

Trial counsel should have been asserting the defendants due process claims, during jury selections under the fourteenth amendment. Swian v. Alabama, 380 U.S. 202 (1965)

Counsel was aware of the biasness, during jury selection [Tr. (6/15/98) Tr 78-79; see Tr. followed 430; 443-46; 476-79; 696-97; 702-03; 1028-30 and 1116-17] to foreclose or exclude any challenges of constitutionality through the use of preemptory challenges did violate the defendant due process. Daniels v. Lousisiana, 419 U.S. 542 (1975) [per curiam] Comm. v. Core, 370 Mass. 369, 371 (1976), Ross, infra at 85. Because impartiality of the adjudication goes to the very integrity of our legal system, the . . . harmless error analysis cannot Apply. Gray v. Mississippi, 481 U.S. 648, 668 (1987), Long at 805.

When trial counsel challenged under cause and was denied he used the preemptory challenge instead of petitioning the single justice under MGL c 211 S 3 [Tr. 468-70 and 476-79]. Several of the jurors selected were challenged for biasness trial counsel had frivolously used preemptory challenge , wasting his challenges and the Court grant additional chal-lennges [Tr. 440-42].

Trial Court constant denial of the challenges of cause, forced trial counsel to frivolously use the preemptory. Especially when the Court erred in rehabilitating several of the jurors. (Earley) [Tr. 245-51]; (Foley) [Tr. 251-54]; (Valette) [Tr. 292-98]; (Marshall) [Tr. 299-303]; (Sjorgren) [TR. 303-09]; (Chapman) [Tr. 348-55]; (Senecal) [Tr. 355-63], and finally the jury fore person (Reardon) [Tr. 458-79].

Because none of these jurors could complete state, they can be impartial. They violated the due process under Article XII Mass. Declaration or Rights, and the Fourteenth Amendment of the United States Constitution. Comm. v. Long, 419 Mass. 798, 802 (1995).

Trial counsel failure to properly challenge the issues before the single Justice of the SJC, but sought to continously use preemptory challenges, as the trial court was forced to grant additional challenges [Tr. 440-42].

In Ham v. South Carolina, 409 U.S. 424 (1973), that if a court refuses to inquire into the biasness of prospective jurors is a violation of due process, a right to trial by impartial jurors. Ristaino v. Ross, 424 U.S. 583, 585 (1976), right to impartial jury under the Sixth and Fourteenth Amendment.

Although in Ham, the courts cited racial bias, a probe of baisness or not being unequivically impartial, must be inquired by the court. Long, at 802. The Court rehabilitated jurors, not futher inquiries of biasness, because of the pervasive publicity. Sheppard and Strobel, supra's. Because none of the jurors cited herein could unequivically state they

-38-

could be impartial. Long, at 804-05. Because of the range given to the jury in a capital case. Ther are unique opportunities for all kinds of prejudices.

Any jurors who may habor ill feelings which may influence their beliefs on morally inferior jurors' decision. Especially with all the news publicity that repleted facts of the crime that involves aggravating factors specified.

Under Masachusetts Law the jury has discretion to determine whether the crime was brutal, senseless and vicious. " It is as broad, to require jury's to determine whether the crime was outragously or wantonly horrible or inhumane. Turner v. Murray, 476 U.S. 35 (1986); Maynard v. Cartwright, 485 U.S. 356, 363-64 (1988), accord, Stringer v. Black, 503 U.S. 222 (1992).

Unlike Long, at 800-01, the defendant had more than half the jury that could not unequivically state they could be impartial. Comm. v. Susi, 394 Mas. 783, 784 (1985). A complete inquiry on biasness denied and voilated the defendants right to a fair and impartial trial, under the due process and equal protection clause. The United States Supreme Court has observed that [t]he propriety of such inquiry has been recognized . . . [and] not confined to any section of the country. Aldrige v. U. S., 283 U.S. 308, 311-13 (1931) and Ristiano, at 597.

## Trial Court Erred in it's Inquiries of prospective Jurors.

The Court are required to specifically to inquire all prospective jurors, who cannot be impartial on mere facts. under Article XII and the Sixth amendment applied to the States through due process clause. The Fourteenth Amendment guaranteed the right to criminal defendants to trial by an impartial jury.

There were seven jurors, who could not unequivically proclaim their impartiality, thereby violating the defendants right. Aldrige, at 308; Long, at 802-05; Ross v. Oklahoma, 487 U.S. 81, 85-88 (1988). If any Jurors entertain prejudice this would preclude him/her from rendering a fair verdict. Thus it would be a gross miscarriage of justice in allowing these jurors to sit.

The court in exercising its discretion, in determining possible jury bias "Must be zealous to protect the rights of the accused" Dennis v. U.S., 339 U.S. 162, 168 (1960). The Court failed to excuse these jurors violating the defendants rights to a fair and impartial trial. Long, at 803-05. Whereas each of these juror's harbored potential bias towards the defendant, no juror should sit, who are not entirely impartial. Davis v. Allen, 11 Pick. 466, 467-68 (1831); and Hall v. Thayer 15 Mass. 219, 223 (1870).[11]/

---

11/Article XXIX of the Massachusetts Declaration of Rights guarantee's " the right of every citizen to be tried by judges as free, impartial and independent as the lot of Humanity admits " they must construe the terms to include Jurors.

All these jurors cited herein were deliberating jurors. This error cannot be viewed as harmless. Ross, at 85, and Gray at 688, [Because "impartiality goes right to the integrity of the adjudicator of our legal system" . . . and harmless error analysis cannot apply].

The defendant asserts that the Court failed in it's inquiry to be tried by a jury selected by non-discriminatory criteria. The selection of bias jurors cast doubt on the integrity of Judicial process . . . thus places fairness of criminal process in doubt. Power v. Ohio, 499 U.S. 400,411 (1991), [Quoting Rose v. Mitchell, 443 U.S. 545, 566 (1979)]. The court cannot allow such difficulties to overcome crimnial defendants rights. It would be better to be overly cautious and excuse jurors biasness, that would decide the case unfairly and not  impartially. Comm. v. Grice, 416 Mass. 586 588 (1991). This is a prima facie showing of impropieties which mandates a reversal; in this action.

Especially when a strong presence of half the Jurors. Who could not unequivically states their impartiality. Long, at 802-03; Susi, at 791; Ross, at 85-86; Aldrige at 314; Dennis at 168, and also see, Wainwright v. Witt, 468 U.S. 412, 430 (1985). The court did not zealously protect the rights of the accused, therefore the must order a new trial.

The error was not harmless and violated the defendants rights demands re-dress, because it is reversible error, and must be treated accordingly.

Trial Court Erred with the Supplemental
Instruction with Proof Beyond Reasonable
Doubt, Lessening the Commonwealths' Bur-
den of Proof. Violated the Defendant's
Due Process Claims Under Article XII of
Massachusetts Declaration of Rights and
the Fourteenth Amendment of the United
States Constitution.

" THe Due Process clause of the Fourteenth Amendment
'protects the accused against convictions except upon proof
beyond reasonable doubt of every fact necessary to constitute
the crime which he is charged.' In Re Winship, 397 U.S. (358)
at 364 90 S.Ct. , 25 L.Ed 2d 368"; Francis v. Franklin, 471
U.S. 307 105 S.Ct. 1965 85 L. Ed2d 344 (1985). Jury instruction
which releives the government of its burden of proof "beyond
reasonable doubt of every fact necessary to constitute the
crime, violates due process requirements. In Re Winship,
supra at 364. see, Sandstrom v. Montana, [442 U.S. 520, 99
S.Ct. 2450, 61 L.Ed2d 39 (1979)]. Mullaney v. Wilbur, 421
U.S. 684 (1975); Comm. v. Pickles, 392 Mass. 775,473 N.E2d 694
(1985).

However, and herein lies the crux of the defendants
arguments, shortly after the retiring to deliberate the jurors
returned to the court room with several questions [Tr. 1740-
58]. More specifically, the jury requested they be given,
instruction on Voluntariness of the defendant's statements
at the Sturbridge Police Station.

In response; the court re-instructed the juror's [Tr.
1758-68]. Whereas in the supplemental instruction the court
gave definitive lanuage twice ~ once incorrectly stating

the law . . . does not exclude action which is taken to quickly . . . " and then repeating the correct statement of law [ Tr. 1796-1807 ]. thus the defendant asserts the only probable explanation is that the court, in fact gave incorrect statementsof law to the jurors, then realized he erred and, then attempted to correct the error by giving the correct statement of law without telling the jurors to disregard the previously given erroneous lanuage.

Whether the juror's confusion as to voluntariness of the defendants statement at Sturbridge Police Station was clarified by inclusion of the correct lanuage in the supplemental instruction, or whether another formulation of the lanauge defining voluntariness such as used in Watkins, 425 Mass. 830, 683 N.E2d 653, 659 (1997); also see Cryer, 426 Mass. 562, 689 N.E2d 808, 813-15 (1998), would have been more easily understood is not clear. What is clear is that the jurors returned to deliberate the defendants' fate with  two conflicting definitions on voluntariness.

It is now well settled that " ' [l]anuage that merely contradicts and does not explain a consitutionally infirm instruction will not suffice to absolve the infirmity' because '[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurrors applied in reaching

their verdict' Comm. v. Repoza II, 400 Mass. 516, 519 (1987) citing approval, Francis v. Franklin, 477 U.S. 307, 105 S. Ct. 1965, 85 L. Ed2d 344 (1985).

Further "Francis" determines that the reviewing court cannot have confidence in the propriety of a sugsequent verdict of guilty unless some other portion of the charge not only contradicts the incorrect lanauge but, through explanation, harmonizes it with the entire charge as well. Francis, con-templates close scrutiny to determine whether lanuage in the instruction not only corrects the erroneous lanuage but also explains it." Comm. v. Repoza II, supra 400 Mass. at 520.

Where, as here the correct given definition of volun-tariness precipitated a request by jurors' for " . . . more definition of . . . Voluntariness, [Tr. 1740-58; 1758-68]. the Court reinstruction as to voluntariness [Tr. 1796-1807] was phrased vitually the exact same lanuage given; the Court includedan incorrect definition of voluntariness [Tr. 1758-68], and failed in its reinstruction [Tr. 1796-1807] an advised the jurors to disregard the incorrect lanuage. This Court cannot be certain which definition the jurors applied in reaching their verdict. Pickles, supra 393 Mass. 775, 473 N. E2d at 697; citingwith approval Sandstrom v. Montana, supra 442 U.S. at 514 [ the test is how " a reasonable juror would have interpreted the instruction."]

It is well established that " it is constitutionally im-premissible to shift to a defendant the burden of disproving an element of a crime charged." Comm. v. Moriera, 385 Mass. 793, 434 N.E2d 196, 198 (1982); Sandstrom, supra 442 U.S. at 517, that " [a] presumption which, although not conclusive, ha[s] the effect of shifting the burden of persausion to the defendant, [ is constitutional]." Sandstrom, supra 442 U.S. at 524. Jury instruction creating either burden-shifting mandatoryor conclusive presumption violates the defendants rights under Due Process of the Fourteenth Amendment to the United States Constitution, to have the state prove beyond reasonable doubt every fact necessary to constitute the crime with which he is charged. The threshold inquiry is to determine the nature of presumption the jury instruction describe that depends upon the way a reasonable juror could have interpreted the instruction. Comm. v. Zezima, 387 Mass. 748, 443 N.E2d 1282, 1284 (1983); also see, Francis, supra 471 U.S. at 315.

However, once again here lies the crux of the defendant's agrument, shortly after retiring to deliberate the juror returned with several questions regarding instruction , [ Tr. 1740-58, and 1758-68], and the Courts' final reinstruction [ Tr. 1796-1807]. Unequivocally created mandatory conclusive presumption, as well as shifted the burden to disprove the statement was not voluntarily given. Thereby violated the defendants due process of law. Francis, supra 471 U.S. at 314 n2 Repoza II Supra 400 Mass. at 518-19.

Against the back drop, it is clearly evident the jurors were confused and uncertain of the law, that they were to apply, and it cannot be denied the erroneous language as to voluntariness of the statement and malice aforethought which couched in mandatory burden shifting and conclusive presumption and, in effect, colasped murder into the lesser included offense of mamslaughter, prjudice the defendant. This is especially true. Where as, here the initial instruction given the definding malice , although couched impermissible infer- ences, percipitated, if not confused, at least uncertainty as to the law, and equally as important, the supplemental instruction, added nothing more to the definition given to jurors other than an incorrect statement of law, and the Court's failure to state to the juror to disregard the incorrect instructions.

In sum the Due Process Clause of Article XII of the Massachusetts Declaration of rights. As well as the Due Process Clause of the Fourteenth Amendment of the United States Con- stitution requires that the defendant be given a New Trial.

> The Cumulative Effects of All Errors
> that Occured Throughout the Trial,
> Prejudice the Defendant's Trial that
> Resulted in a Verdict that Cannot be
> Relied upon as Just.

There are significant errors cited herein this memorandum of law, that occcured throughout the trial and on appeals. That if taken into account. The Major errors with the smaller combined errors, did so effect the trial with prejudice and the verdict cannot be relied upon as just.

-46-

Trial Court Erred in Rehabilitating
Jurors Whom Were Bias, that Could
Not Unequivically State Their Im-
Partiality.

The Trial court erred when seven of the jurors could not state unequivically they could be impartial [ Tr. 245-54; 292-309; 348-63; 458-79].

Trial Court erred when the defense counsel challenged under cause, and was forced to use preemptory challenges. see,[Memo Pgs. 37-41; Tr. 78-79; 245-54; 292-98; 303-09; 348-63; 430; 440-46; 458-79; 696-97 702-03; and 1116-17 ]. Because seven jurors selected and seated could not unequivically state their impartiality, violated the defendant Due Process Clause under Article XII of the Massachusetts Declaration of rights and the Fourteenth Amendment of the United States Constitution. see, Long, supra at 802-03; Daniels, and Swain, supra's.

The impartiality of jurors goes to the very integrity of our legal system. The Juror's that could not unequivically state their impartiality, the Court cannot construe the . . . . Harmless error analysis. Gray, supra at 668; Long, supra at 805; Ristaino, supra at 585; Ross, and Ham, supra's.

The trial court failed in a complete inquiry on Juror's biasness as in Comm. v. Susi, supra at 784. Thus the court denail to inquire as to juror's biasness violated the defendant right to a fair and impartial trial under Article XII of the Massachusetts Declaration of rights, and Sixth and Fourteenth Amendment to the United States Constitution. This Inherent prejudice demands relief and new trial.

-47-

                    The Denial of the Promise of Rewards
                    and Inducements were Non-Disclosed
                    The Defendant was Unaware of What
                    Motivated Prosecution Witnesses to
                    Testify.

The prosecutor failed to disclose all promises of rewards, inducements or agreements struck with or even if they were Quid Pro Quo Basis. This Evidence is relevant to the jury's deliberation. see, U.S. v. Turner, 490 F2d 1543, 1550 (1986); Iverson, supra at 805: Bagley, at 684; Brady, Giglio, and Mooney, Supra.

Moreover the Prosecutor withheld evidence that another could have committed this crime, and mis-stated facts of the evidence in bad faith. Comm. v. Good, 409 Mass. 612 623-25 (1991); Comm. v. O'Brien, 377 Mass. 772 (1979).

In Comm. v. Kozec, 399 Mass. 514 (1987), the S.J.C. cited that standing alone, each indivdual errors indentified might not require a reversal. However the " Collective Errors " coupled with the numerous flaws in the proceedings warrants a reversal. U.S. v. Wallace, 848 F2d 1464 (1984). the cumu-lative effects of all errors is prejudicial and demands a new trial. The issues of Constitutional importance, the right to a fair and imaprtial jury, ineffective assistance of trial and appellate counsel and the overwhelming absence of guilt. A long with the speculative theory of circumstantial hearsay evidence, created a strong likelihood for a miscarriage of justice that occured in this action. Demands relief and warrants a new trial.

                              -48-

CONCLUSION

THE DEFENDANT JOHN LeBLANC, HAS DEMONSTRATED IN HIS

MOTION AND SUPPORTING MEMORANDOM OF LAW, CITING ALL ERRORS

THAT OCCURED AT TRIAL AND ON DIRECT APPEALS. THAT THE ERRORS

AT TRIAL WAS INFECTED WITH PREJUDICE, THAT THE RESULT CANNOT

BE RELIED AS JUST.

THE DEFENDANT HAS SHOWN THAT BETTER PREPARATION AND ATTENTION

BY TRIAL AND APPELLATE COUNSEL, WOULD HAVE ACCOMPLISHED

A DIFFERENT RESULT. THE MISCARRIAGE OF JUSTICE STANDARD

MUST BE APPLIED HERE, AS THERE ARE MULTIPLE ISSUES OF

CONSTITUTIONAL IMPORTANCE. FOR THE FOREGONE REASONS CITED

HEREIN AND ABOVE. THE DEFENDANT MOVE THIS HONARABLE COURT,

TO ISSUE AN ORDER AN EVIDENTIARY HEARING ON THE MERITS AND

FACTS CITED HEREIN, AND/OR IN THE ALTERNATIVE, ORDER JUDGEMENT

OF AN ACQUITAL AND RELEASE THE DEFENDANT FROM CUSTODY FORTHWITH.


RESPECTFULLY SUBMITED

DATE/25.05

_JOHN LeBLANC_
O.C.C.C.
1 ADMINISTRATION RD.
BRIDGEWATER,MASS.02324-3230

WOCR1996-00458

Commonwealth v Leblanc, John R

| Date | Paper | Text |
|------|-------|------|
| 06/15/1998 | 32.0 | Deft files Motion for More Than the Statutory Number of Peremptory Challenges - Allowed not to exceed 16 (Gants,J.) |
| 06/15/1998 | 33.0 | Deft files Motion in Limine to Exclude Hearsay Re: Alleged Victim's Frightened State of Mind - Allowed (Gants,J.) |
| 06/15/1998 | 34.0 | Deft files Motion to Prevent Any Important Commonwealth Witness/Police Officer from Sitting At Counsel Table with the Assistant District Attorney - Allowed as agreed (Gants,J.) |
| 06/15/1998 | 35.0 | Affidavit of John T. Lu in Support of Motion to Individually Examine Prospective Jurors and Motion for Change of Venue |
| 06/15/1998 | 36.0 | Deft files Motion for Sequestration of Witnesses |
| 06/15/1998 | 37.0 | Deft files Motion in Limine - Denied (Gants,J.) |
| 06/15/1998 | 38.0 | Deft files Motion in Limine to Exclude Evidence of Defendant's Prior Conviction(s) - Allowed as to crimes of Violence (Gants,J.) |
| 06/15/1998 | 39.0 | Deft files Motion in Limine to Exclude Alleged Prior"Bad Acts" |
| 06/15/1998 | 40.0 | Deft files Memorandum in Opposition to Motion to Reopen Motion to Suppress Statements |
| 06/15/1998 | 41.0 | Deft files Motion to Individually Examine Prospective Jurors |
| 06/15/1998 | 42.0 | Deft files Ex Parte Motion for Funds (under seal) for Demonstrative Aids - $500.00 and Motion to Seal and Impound this Motion |
| 06/15/1998 | 43.0 | Deft files Motion in Limine to Exclude Photographs of Alleged Victims |
| 06/15/1998 | 44.0 | Deft files Preliminary Request for Jury Instructions |
| 06/15/1998 | 44.5 | Deft files Required Finding of Not Guilty |
| 06/16/1998 | 45.0 | Deft files Amended List of Potential Witnesses |
| 06/22/1998 | | Telephone records recieved (Bell Atlantic) DSS Drawer |
| 06/22/1998 | 46.0 | Deft files Memorandum of Law in Support of Requested Jury Instructions Re: Manslaughter and Consideration of Evidence of Intoxication |
| 06/22/1998 | 47.0 | Commonwealth files Request for Jury Instructions |
| 06/23/1998 | | Motion (P#44.5) Denied (Gants,J.) |
| 06/23/1998 | 48.0 | Deft files Renewed Motion for Required Finding of Not Guilty - Denied (Gants,J.) |
| 06/24/1998 | 49.0 | Deft files Proposed Jury Instruction in Response to Jury Question |
| 06/25/1998 | 50.0 | RE offense 1: Guilty verdict/1st Degree Murder-Deliberate Premeditated Malice Aforethought and Extreme Atrocity or Cruelty (Gants,J.) |
| 06/25/1998 | | Bail set: Held without Bail to 6/26/98 (Gants,J.) |
| 06/25/1998 | | Sentence stayed until 06/26/98 at 9:00 a.m. (Gants,J.) |
| 06/25/1998 | 51.0 | RE offense 2: Guilty verdict/ 1st Degree Murder, Extreme Atrocity or Cruelty (Gants,J.) |
| 06/25/1998 | | Sentence stayed until 06/26/98 at 9:00 a.m. (Gants,J.) |
| 06/26/1998 | | Sentence imposed: Re: Offense #1: LIFE (Gants,J.) |
| 06/26/1998 | | Sentence credit given as per 279:33A: 687 days (Gants,J.) |
| 06/26/1998 | | Victim-witness fee assessed: $60.00 |
| 06/26/1998 | | Sentence imposed: Re: Offense #2: LIFE to be served from and after sentence imposed on 96-0458(1) (Gants,J.) |
| 06/26/1998 | 52.0 | Deft files Motion for Stay of Execution of Sentence Pending Appeal |

*[handwritten notes in right margin: "20 Camp Rd Dorothy Jacobs Dated 8/1/96 with held Evidence"]*

App. 9

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
WORCESTER DIVISION
SUPERIOR COURT DEPARTMENT
NO. 96-0458

COMMONWEALTH

v.

**JOHN LEBLANC**

**AFFIDAVIT OF JOHN LEBLANC**

I, John LeBlanc, state the following:

1.    My name is John LeBlanc and I am 33 years old;

2.    On the afternoon of August 8, 1996, Trooper Ferraro of the Massachusetts State Police brought me to the Sturbridge Police Station to be questioned;

3.    I had no idea what was going on at the time I was questioned.

4.    I did not intend to give up any rights. I wanted to speak with a lawyer before I was questioned;

5.    I looked at the paper they showed me, but nothing on it sank in. I then signed it;

6.    I did not understand that I did not have to talk to the police or that I was suspected of a crime.

Based on personal knowledge. Signed under the pains and penalties of perjury.

**FILED**

MAY 0 4 1998

ATTEST
_Loung P Lamoureux_
CLERK

_Johnny LeBlanc_

_May 28, 1998_
John LeBlanc

dated:    April 30, 1998

PALMER DISTRICT COURT
OFFICE OF CLERK-MAGISTRATE
235 Sykes St.
Palmer, MA 01069-1191

LEGAL MAIL

Johnny LeBlanc
Inmate
Administration Road
Bridgewater, MA 02324

02324/3333

95-1144

Dear Mr Riddle
    Well it that time of the year again
I wish you a merry Christmas.
    I'm looking for a copy of my Juvenal
and adult Record, I'm working on my case pose
wich isit a case I didn't do anything I'm not
that type of person to hurt any innocent
person I wanted to say something after I
seen you I went to Court thru the Summer
of 96 and I was the last person there in the
Court Room as I walked out there was a
medeum blue 1967 Camaro in the handicap
parking spot infront of the stairs with the
Drivers Door open a blonde girl came around
the other side of the car and the first thing
she said was are you James Bond, I said who
wants to know? then she said is this your car
I've had a few and my color is baby blue and
I wasnt inpressed so I said "no" then she
said just git in and we will chat your friend
I wasnt buying it and she got in and Drove
away. I know who I am and what I'm
hiding some one has there price mistaken
    I don't want to have anyone on my tail as
I go with a F - P - R - M - RRI, I'll know
the possie will be left in the Dust.
                a old friend Johnny, Allan

COPY



The Spring of 1987 at the worcester Civic Center, Court yet remember the Band but a Military Brats Grabbed me I didn't refuse my Comrads invitation to them Belief for + Deveres Girls, I didn't refuse my Comrads invitation we all went to south bridge I was with 2 cousins, I rode in a town 4door Ford crown victorian with these young Lady Brats who says they had to be back on Base at 4 or 4:30 they only knew who they Captured for real it would be more than both a.m Belief in 85 I was taken to some sky scraper to inlist best Physicall in Boston Government Something I Bit off the Bus in DC And was approached by another Band. Who insisted I Go with him he got pretty Brice'd with his Roger revolver and wanted to buy my Back Side we to meet some of his friends ect. He shot out of my Back Side New few Shots roaring fast me I Just made it out of DC that Spring Night of March or April Less than 48 hours before I was London in milton memory Riding in drivers agold 76 harriet Ford 150 it was a hit and also possible Dip Band knew to be at the Bus Station No a sui I T New 3 un men again how Dip Band Knew to be a tip before the Port athority or while I knew I was but i had to be a tip before the Port athority when I charged Busses in was better on the greyhound from Port athority and my Brats or Brothers DC. I don't Just Pray to OUR Country and my Brats or Brothers But Pray to all you who try to murder do un armed man a man of God also wanted By you the Government Alien Man Moroachusetts TimeBand Jim Oferey